IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



CHRISTEL E. CONWELL,             §
                                 §
        Plaintiff,               §
                                 §
VS.                              §  NO. 4:09-CV-656-A
                                 §
MICHAEL J. ASTRUE,               §
COMMISSIONER OF SOCIAL           §
SECURITY,                        §
                                 §
        Defendant.               §

MEMORANDUM OPINION
and
ORDER

By order signed March 30, 2011, the court ordered the parties to provide additional briefing on a subject to which the court did not consider that the parties had directed their attention in filings made while the above-captioned action was pending before the magistrate judge on referral for findings, conclusions, and recommendation. The parties have now filed their supplemental briefing.

Defendant, Michael J. Astrue, Commissioner of Social Security, ("Commissioner") maintains in his brief that there was substantial evidence in the record to support the residual functional capacity ("RFC") finding of the administrative law judge ("ALJ") that played a role in the ALJ's conclusion that the

claim of plaintiff, Christel E. Conwell, for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423(d)(1)(A), should be denied.[1] Commissioner requests that this court affirm his decision denying benefits and dismiss plaintiff's complaint.

Plaintiff's supplemental brief seems to make two points. First, she says that she discussed the subject of the court's concern in the brief she filed when the case was before the magistrate judge and, second, that this court has no authority to review the magistrate judge's proposed findings, conclusions, and recommendation ("FC&R") because no objection was made by either party to any part of the FC&R.

The court first directs its attention to the second point made by plaintiff in her supplemental brief. She cites 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-53 (1985); and Douglass v. United Services Automobile Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996), as authority for her contention that this court should not conduct a de novo review of the FC&R. Plaintiff has misread those authorities. To whatever extent they have relevance to the proposition for which they were cited, those

---

[1] The decision of the ALJ became the final decision of the Commissioner. Tr. at 1.

authorities stand for the rule that neither party to a Social Security action such as this has a right to complain of a finding, conclusion, or recommendation of the magistrate judge unless, and only to the extent, the party has objected to the findings, conclusions, and recommendation.

Section 636(b)(1) does provide, when considered in context with applicable case law, that the district judge is obligated to make a de novo review of only those portions of a magistrate judge's findings, conclusions, and recommendation to which an objection is made. However, that does not imply that when no objection is filed the district judge is not authorized to make a de novo review. In pertinent part, § 636(b)(1) states that "[a] judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Plaintiff overlooked in Thomas the statement that "while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte . . ., under a de novo or any other standard." 474 U.S. at 154. Not only does the district judge have the authority to cause a correct judgment to be made, he has the responsibility to make an informed, final

3

determination. In <u>Mathews v. Weber</u>, the Supreme Court explained:

> The magistrate may do no more than propose a recommendation, and neither § 636(b) nor the General Order gives such recommendation presumptive weight. The district judge is free to follow it or wholly to ignore it, or, if he is not satisfied, he may conduct the review in whole or in part anew. The authority--and the responsibility--to make an informed, final determination, we emphasize, remains with the judge.

423 U.S. 261, 270-71 (1976).

Therefore, the court has conducted a <u>de novo</u> review of the magistrate judge's findings, conclusions, and recommendation. The magistrate judge found that plaintiff's contentions as to the first two issues presented in plaintiff's brief are without merit.[2] The court adopts the magistrate judge's findings and conclusions as to those issues.

However, the court is not adopting the magistrate judge's findings and conclusions as to the issue that caused the magistrate judge to recommend that Commissioner's decision be reversed and remanded, i.e., whether the ALJ's RFC finding is

---

[2]As defined by the magistrate judge in the FC&R, the first two issues were:

1. Whether the ALJ applied the correct legal standard in weighing the treating source opinion.

2. Whether the ALJ improperly evaluated Conwell's credibility.

FC&R at 4.

4

support by substantial evidence. While the ALJ's explanation of his reasons for reaching the RFC conclusion that led to his denial decision perhaps is not perfect, the court is satisfied that it is legally sufficient and that it is supported by substantial evidence in the record.

The RFC conclusion of the ALJ that is at issue was as follows:

> In consideration of combined adverse effects of all the impairments (20 CFR 404.1523 & 404.1545 and SSR 96-8p), I have concluded that claimant has the exertional capacity for the sustained performance (SSR 96-8p) of a full range of sedentary work duties, the least strenuous of the several work activity levels.

Tr. at 15 (footnote omitted). The definition of "full range of sedentary work activity" was correctly noted by the ALJ as follows:

> Workers capable of a full range of sedentary work activity must be able to lift/carry objects that weigh a maximum of ten pounds and to occasionally lift/carry small articles such as docket files, ledgers, or small tools, and, while the worker must occasionally be on her feet during the workday, she usually sits for six of the eight hours in workday. 20 CFR 404.1567 and SSRs 96-9p & 83-10.

Tr. at 15 n.8.

Included in the record were two professional Physical Residual Functional Capacity Assessments, the first made in June

5

2007, Tr. at 140-47, and the second in September 2007, Tr. at 173. The June 2007 assessment resulted in a finding that plaintiff had an RFC greater than the one the ALJ attributed to her. The professional concluded that plaintiff could occasionally lift a maximum of twenty pounds (in contrast with the ALJ's maximum of ten pounds); that she could frequently lift and/or carry ten pounds (in contract with the ALJ's finding of "occasionally lift/carry small articles such as docket files, ledgers, or small tools"); that she could stand and/or walk a total of about six hours in an eight-hour workday (in contrast with the ALJ's "occasionally be on her feet during the workday" finding); and, that she could sit about six hours in an eight-hour workday (which is consistent with a limitation found by the ALJ). Tr. at 141. The June 2007 assessment found that no postural, manipulative, visual, communicative, or environmental limitations were established. Tr. at 142-44. In September 2007, the June 2007 assessment was affirmed by a different professional after a review of all the evidence in the file and the RFC. Tr. at 173.

Thus, there was evidence in the record that would have supported a conclusion by the ALJ that plaintiff had a greater exertional capacity for sustained performance than the ALJ found.

6

The ALJ considered those assessments, but chose, on the basis of the overall record, not to give them full effect. Tr. at 14.

When discussing the factors he considered in assessing impairment severity and secondary functional limitations, the ALJ provided the following explanation:

> When assessing impairment severity and secondary functional limitations, I evaluated claimant's testimony and other statements regarding daily activities, restrictions, and symptoms, but I considered several factors and they are not controlling. In addition to the testimony and objective medical facts/opinions, I considered other relevant factors, including but not limited to (1) claimant's daily activities; (2) the location, duration, frequency and intensity of her subjective complaints; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness and side-effects of medication; (5) the prescribed treatment regimen; and (6) any other palliative measures she may use. 20 CFR 404[.]1529 and SSR 96-7p.

Tr. at 13.

At the outset of his evaluation, the ALJ took into account plaintiff's impairments, which he found to be severe and to have existed throughout the critical time period; and, he noted that those impairments were capable of producing the type of subjective complaints plaintiff expressed. Tr. at 12. He then evaluated the intensity, persistence, and adverse effects of the subjective symptomology as he determined plaintiff's RFC and work-related functional limitations. Id.

7

The ALJ considered plaintiff's own testimony, including her statements that she could sit for two to three hours, but would move around and stand or change postures, could not stand very long, and had to rest after walking a couple of blocks, Tr. at 13, her description of her exertional and activity limitations, id., as well as her description of the activities in which she said she had been engaged, such as doing dishes, some household chores, shopping, and driving, id. Of some significance to the ALJ was plaintiff's testimony that she took general care of her home and her eight-year-old daughter and had been a Bible study volunteer, engaging in study sessions that last about one-half hour, and had been for several years. Id. The side-effects of medication taken by plaintiff were discussed, and considered, by the ALJ. Id.

As he was expected to do, the ALJ considered the absence of evidence of certain kinds, explaining that "neither the objective medical evidence nor reasonable inference nor any other non-medical evidence establishes that claimant's post-onset ability to function is so severely impaired as to preclude the performance of all work activities." Id.

While the ALJ did not accept certain findings and conclusions of Dr. Boulden, he took into account the medical

8

records of all physicians in reaching his RFC conclusion. Certain of the information contained in those records lent support to the ALJ's RFC conclusion. Tr. at 14. The ALJ noted negative exam results from a clinical examination performed by Dr. Sharp in March 2005, and the absence of positive examination results at that time. <u>Id.</u> More generally, the ALJ made mention that while the records show that plaintiff has alternating periods of feeling better and flare-ups, the "notes lack clear, explicit objective observations and findings necessary to support the proposed limitations and restrictions." Tr. at 14-15.

The ALJ summed up significant omissions from the records by saying:

> There are no indicia of intractable pain, such as unexplained weight change, disuse muscle atrophy or guarding, blood pressure spikes or spells of rapid breathing or tachycardia, or premature aging and claimant did not undertake any lifestyle adaptations or home environment alterations to accommodate the impairment-driven restrictions she describes in the critical period. Claimant has relied on conservative care, with no formal physical therapy or narcotic-analgesic pain medication, and, despite the impairments, she engages in a fairly wide range of household chores and daily activities.

Tr. at 15.

Considering all the evidence in the record upon which the ALJ acted, the court cannot conclude that there is not

substantial evidence to support the ALJ's RFC conclusion. Nor can the court conclude that the ALJ was unable to reach his RFC conclusion without impermissibly relying on his own medical opinions. There was ample evidence in the record to permit the ALJ legitimately to conclude, as he did, that plaintiff had the exertional capacity for sustained performance of a full range of sedentary work duties.

The only remaining issue to be considered is the third issue presented by plaintiff in the brief she filed with the magistrate judge, i.e., "[w]hether the ALJ erred in applying the medical-vocational guidelines at Step Five instead of relying on the testimony of the vocational expert." FC&R at 4. The magistrate judge did not make any findings or conclusions as to such issue because he had already determined that the action should be reversed and remanded. After reviewing the arguments made by the parties on that issue, the court finds that the ALJ did not err.

When a claimant seeking disability benefits under the Act suffers from only exertional impairments, or, if non-exertional impairments do not significantly affect the claimant's RFC, the ALJ may rely exclusively on the medical-vocational guidelines ("guidelines") in Appendix 2 of Subpart P of the Social Security regulations to determine, at the Fifth Step of the sequential

evaluation process, whether there are jobs in the national economy that the claimant can perform considering the claimant's RFC, age, education, and past work experience. Selders v. Sullivan, 914 F.2d 614, 618 (5th Cir. 1990) (per curiam); Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir. 1987). Otherwise, the ALJ must rely on upon testimony by a vocational expert to establish that such jobs exist. Fraga, 810 F.2d at 1304.

Plaintiff argues that the ALJ should have relied on the testimony of the vocational expert rather than follow the guidelines because she suffers from "numerous non-exertional limitations." Pl.'s Br. at 17-18. However, the ALJ found that plaintiff had the RFC to perform a full range of sedentary work duties, undiminished by any non-exertional limitations. As discussed above, such an RFC finding was supported by substantial evidence. Thus, the ALJ was entitled to use the guidelines, rather than a vocational expert, to determine whether jobs exists that plaintiff can perform.

For the reasons stated above, the court has concluded that the Commissioner's denial of benefits should be affirmed, and

that plaintiff's complaint should be dismissed.

THE COURT SO ORDERS.

SIGNED April 18, 2011.

_____
JOHN McBRYDE
United States District Judge